IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIJAFA R. DAVIS, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No.: CV 02-P-2924-S |
| | } |
| EQUIFAX INFORMATION<br>SERVICES LLC, | }<br>}<br>} |
| Defendant. | } |

**ENTERED**

**SEP 1 5 2004**

## MEMORANDUM OPINION

The court has before it Defendant Equifax Information Services LLC's Motion for Summary Judgment. (Doc. # 29). The motion has been fully briefed and was under submission, without oral argument, as of December 22, 2003. (Doc. # 4).

Plaintiff Kijafa Davis alleges that Equifax Information Services, LLC ("Equifax") violated the Fair Credit Reporting Act ("FCRA") by negligently and/or willfully failing to comply with 15 U.S.C. §§ 1681e and 1681i.[1] Plaintiff's claims arise out of disputes regarding a mortgage account and the status of Plaintiff's student loans.

Defendant's motion for summary judgment asserts that no genuine issue of material fact exists and that Defendant is entitled to judgment as a matter of law. (Doc. # 29). The court, having considered the briefs and evidentiary submissions, finds that the Defendant's motion is due to be granted.[2]

---

[1] Plaintiff seeks damages for willful noncompliance with the above-referenced provisions of the FCRA under 15 U.S.C. §1681n and for negligent noncompliance under 15 U.S.C. §1681o.

[2] The court also has before it Defendant's Motion to Strike Portions of Plaintiff's Affidavit. (Doc. #35). That motion is due to be denied.

I.     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

II.    **Relevant Undisputed Facts**[3]

Equifax is a "consumer reporting agency" within the meaning of the FCRA. (Affidavit of

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

2

Alicia Fluellen, ¶3). Equifax assembles, maintains, and produces credit reports on nearly every American consumer. (Statement of Undisputed Facts, ¶25). The information for Equifax's reports comes directly from sources of credit information or "furnishers," including banks, creditors, and merchants. (Statement of Undisputed Facts, ¶27). Equifax accepts information on a consumer's credit only from those sources of information which are determined to be reliable based either on Equifax's prior experience with the source or the particular source's reputation. (Fluellen Aff., ¶4).

Equifax has detailed procedures regarding the investigation of disputes by consumers and uses an automated system called Automated Consumer Interview System ("ACIS") to track investigations. (Fluellen Aff., ¶ 6; Fluellen Depo. 20:24-21:4). A dispute is catalogued in ACIS when a consumer telephones Equifax with a complaint; Equifax then attempts to verify the information with the furnisher. (Fluellen Aff., ¶ 6; Fluellen Depo, 35:10- 36:6; 38:18-25). If the information is verified, the consumer's credit report is updated to reflect the new information. (Fluellen Aff., ¶ 6). If no response is received from the furnisher, ACIS alerts Equifax. (Fluellen Depo, 65:8-17). If the information is inaccurate or can no longer be verified, perhaps because the furnisher failed to respond, the information is deleted from the consumer's credit report. (Fluellen Aff., ¶ 6). At all stages in the process, the consumer is advised of his or her rights under the FCRA, including the opportunity to have a statement regarding the information inserted into the credit report in accordance with 15 U.S.C. § 1681i. (Fluellen Aff., ¶ 6).[4]

---

[4] Although Plaintiff's response to Defendant's statement of facts indicates that Plaintiff disputes this fact, Plaintiff offers no citation to the record in support of her assertion. (Doc. # 32, at No. 9). Pursuant to Exhibit D of the court's Initial Order, "[a]ny facts which are disputed shall contain a specific reference to the evidentiary record. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*" (Doc. # 4, at 4)(emphasis in original). The court explains that it "requires each sentence to cite a reference to the record

Included in Equifax's database is a credit file on Plaintiff. (Fluellen Aff., ¶ 3). Equifax had no indication that the creditors who reported information on Plaintiff were not trustworthy. (Fluellen Aff., ¶ 19).

### A. Plaintiff's Mortgage Account

Plaintiff obtained a mortgage loan in 1994 from Collateral Mortgage (now known as New South). (Davis Depo. 17:8 – 17:23). Plaintiff is the sole mortgagee and source of payment for the mortgage note. (Davis Depo. 7:13; 8:20-18:4; 17:12-19).

Plaintiff has never been delinquent in making her monthly mortgage payments. (Davis Aff., ¶4). However, in 2000, the mortgage was reporting on her credit file as being paid late. (Fluellen Aff., ¶8). In September 2000, Plaintiff contacted Equifax to dispute the late-payment status of her mortgage account. (Fluellen Aff., ¶ 8). Equifax then contacted the mortgage company to investigate the dispute, but received no response within the time permitted by the FRCA. (Fluellen Aff. ,¶ 8).[5] Because the information could not be verified, the account was deleted from the consumer's credit file pursuant to 15 U.S.C. § 1681i(a)(5). (Fluellen Aff.,¶ 8; Davis Depo. 66:9-66:17).

Equifax notified Plaintiff by mail of the deletion of her mortgage account. (Fluellen Aff., ¶ 8). In early 2001, Plaintiff complained to Equifax about the deletion and requested that the account be added back to her credit file. (Fluellen Aff., ¶ 9). In response to her requests, Equifax explained

---

because, typically, the non-movant has the burden of proof on most issues." (Doc. # 4, at 4). In this case, Plaintiff has failed to comply with the court's explicit instructions. Moreover, upon independent examination of the record, the court finds no evidence that controverts the fact listed above. Accordingly, for purposes of the motion for summary judgment, the court must deem the fact undisputed.

[5] Although Plaintiff's response to Defendant's statement of facts indicates that Plaintiff disputes this fact, for purposes of the motion for summary judgment, the court must deem the fact undisputed for the reasons outlined in footnote 4 *supra*.

4

that "Equifax only adds credit account information received from reporting members on a regular basis." (Fluellen Aff., ¶ 9). On or about November 21, 2001, the mortgage company contacted Equifax and verified Plaintiff's account information. (Fluellen Aff., ¶ 10). Subsequently, Equifax notified Plaintiff that, due to verified information received from the mortgage company, the mortgage account had been added back to Plaintiff's credit file. (Fluellen Aff., ¶ 10).

### B.  Plaintiff's Student Loans

Plaintiff attended college with assistance from two student loans, both of which were obtained through Sallie Mae and later transferred to USA. (Davis Depo. 14:13 – 14:21). Plaintiff made regular monthly payments to Sallie Mae until sometime in 1998, when her income stopped after Plaintiff was diagnosed with Dysautonomia. (Davis Depo. 24:8 – 24:16)  According to Plaintiff, her loans were in deferment when she stopped making payments. (Davis Depo. 24:8 - 25:16, 28:4-28:14; Davis Aff. ¶ 11). In December 2000, USA informed Plaintiff that her student loans had been discharged due to her disability determination. (Davis Depo. 28:4-14; Davis Aff. Ex. B). However, sometime in 2001, Plaintiff's student loan companies reported to Equifax that her loans had been paid late. (Fluellen Aff., ¶11).[6]

Beginning in mid-2001, Plaintiff contacted Equifax on approximately eight different occasions to dispute items on her credit file, including her student loan accounts and the non-appearance of her mortgage. (Davis Depo. 26:9-14, 32:18; Fluellen Aff., ¶¶ 8-9, 11-12).[7] On each

---

[6] Although Plaintiff's response to Defendant's statement of facts indicates that Plaintiff disputes this fact, for purposes of the motion for summary judgment, the court must deem the fact undisputed for the reasons outlined in footnote 4 *supra*.

[7] Although Plaintiff testified that she first suspected that her college student loans were not being reported accurately by Equifax sometime in 2000, (Davis Depo. 23:1), she waited until June 2001 to contact Equifax about the student loans.  However, Plaintiff did contact Equifax in

occasion, Equifax conducted a reinvestigation by contacting the furnishers of information, notifying them of the nature of the dispute, and asking them to investigate the information reported. (Fluellen Aff., ¶ 11). On each occasion, the various student loan creditors verified the accuracy of the reported information. (Fluellen Aff., ¶ 11).[8] Equifax notified Plaintiff after each of the reinvestigations, explaining what items had been investigated and the results of each investigation. (Fluellen Aff. ¶ 11).

On or about October 31, 2001, Plaintiff again disputed the status of her student loan accounts. (Fluellen Aff., ¶ 12). Although Equifax contacted the creditor to investigate the dispute, it did not respond within the permissible time frame. (Fluellen Aff., ¶ 12).[9] Based on Equifax's inability to verify the information, the accounts were removed from her credit file in November 2001, and Plaintiff was notified of the removal. (Fluellen Aff., ¶ 12).

Since October 2001, Plaintiff has not contacted Equifax to dispute information on her credit file. (Fluellen Aff., ¶ 13).

---

September 2000 regarding her mortgage account.

[8] Although Plaintiff's response to Defendant's statement of facts indicates that Plaintiff disputes this fact, for purposes of the motion for summary judgment, the court must deem the fact undisputed for the reasons outlined in footnote 4 *supra*. Further, Plaintiff admitted that she does not know who Equifax contacted during their investigation of her student loan disputes and does not know what information Equifax asked the student loan creditors to reinvestigate. (Davis Depo., 31:5-31:12, 35:20-36:12). Plaintiff also stated that she does not know what the creditors told Equifax following the requests to investigate. (Davis Depo. 42:19 – 42:2).

[9] Although Plaintiff's response to Defendant's statement of facts indicates that Plaintiff disputes this fact, for purposes of the motion for summary judgment, the court must deem the fact undisputed for the reasons outlined in footnotes 4 and 8 *supra*.

C. **Plaintiff's Claims**

Plaintiff alleges that Equifax negligently and/or willfully failed to comply with 15 U.S.C. §§ 1681e(b) and 1681i. Section 1681e(b) of the FCRA requires that Equifax follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the information relates." 15 U.S.C. §1681e(b). Section 1681i of the Act requires Equifax to do the following: (1) perform a thorough investigation or reinvestigation of a consumer dispute regarding the completeness or accuracy of any item of information in a consumer's file at a reporting agency, and (2) provide a creditor with all relevant information regarding the dispute that the agency has received from the consumer. 15 U.S.C. §1681i.

Plaintiff alleges that Equifax failed to be reasonable in its procedures to assure maximum possible accuracy of the information contained in Plaintiff's report relating to the following: (1) the deletion of Plaintiff's Collateral Mortgage information in late 2000; (2) a five to six month delay in responding to Plaintiff's requests and disputes regarding the deletion of her mortgage account; (3) a series of disputes regarding Plaintiff's Sallie Mae/USA Funds student loan account; and (4) providing the creditor Sallie Mae/USA Funds with all the information that Plaintiff provided to Equifax. Plaintiff claims that, as a result of these failures, she was denied credit from Alabama Power, Compass Bank, Gateway Computer and Travelers Insurance. She also claims emotional distress and exacerbation of health based on Equifax's alleged actions.

### III. Applicable Substantive Law and Analysis

#### A. In Accordance with § 1681e(b), Equifax Followed Reasonable Procedures to Assure Maximum Possible Accuracy of Plaintiff's Information

A credit reporting agency's duty is outlined in § 1681e(b) as follows: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). In order to establish a *prima facie* case for violation of this section, Plaintiff must show that (1) inaccurate information was included in her credit report, (2) the inaccuracy was due to Equifax's failure to follow reasonable procedures to assure the maximum possible accuracy of her credit file, and (3) she suffered injury which was caused by the inclusion of the inaccurate entry. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1154-55 (11th Cir. 1991). Equifax is not strictly liable under the FCRA merely for reporting inaccurate information; rather, Plaintiff must show that Equifax failed to follow reasonable procedures. *Cahlin*, 936 F.3d at 1154-55. The standard of care applicable to Equifax's conduct is what a reasonably prudent person would do under the circumstances. *See, e.g., Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982).

##### 1. The Mortgage Account

Plaintiff claims that Equifax "prematurely and erroneously deleted her mortgage account with Collateral Mortgage." (Doc. # 31). The undisputed facts indicate that, to the contrary, Equifax acted reasonably and pursuant to the FCRA with regard to this dispute.

When Plaintiff informed Equifax that her credit report showed that she was late in paying her mortgage, even though she had never been late in making a payment, Equifax promptly informed

the mortgage company of her dispute and began invesigating. (Davis Aff., ¶¶ 4,7; New South Federal certified document 2; Fluellen Depo, p. 62; Fluellen Aff.,¶ 8). Nonetheless, the mortgage company failed to respond to Equifax's contact. (Fluellen ¶ 8). Because the information could not be verified, the account was deleted in October 2000 from Plaintiff's credit file. (Fluellen Aff.,¶ 8; Davis Depo. 66:9-66:17).

Deleting an account in response to a dispute is specifically authorized by the FCRA. Section 1681i(a)(1)(A) of the FCRA requires an agency to "reinvestigate . . . and record the current status of the disputed information, *or delete the item from the file* in accordance with paragraph 5 [describing the circumstances in which an account "cannot be verified"]." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). Plaintiff admits that Equifax has "a purported right to delete a disputed item from [her] file," (Doc. # 31, at 18), and the court finds that Equifax acted in accordance with the FCRA and as a reasonably prudent person would under the circumstances.

The following year in March 2001, Plaintiff's mortgage company sent notices to all the credit reporting agencies, including Equifax, requesting that Plaintiff's mortgage account be reinserted on her credit file. (Davis Aff., ¶ 7; New South Federal certified documents 3, 4, 7-16). After receiving a written verification of account from the mortgage company in November 2001, Equifax immediately added the mortgage back to Plaintiff's credit file. (Fluellen ¶10).

Although Plaintiff complains that it took several months for Equifax to reinsert her mortgage account, Plaintiff has not shown that Equifax had a duty to reinsert the account at all, much less within a certain time frame. The FCRA does not specifically require a reporting agency to

affirmatively add credit data to a report.[10] The official interpretation of section 1681e(b) by the Federal Trade Commission ("FTC"), the administrative agency charged with enforcement of the FCRA, provides: "Consumer reporting agencies are not required to include all existing or derogatory or favorable information about a consumer in their reports." *Statements of General Policy or Interpretations Under the Fair Credit Reporting Act*, 16 C.F.R., Subchapter F, Pt. 600, Appendix, pp. 492-519.[11] The FTC official staff commentary provides:

> The FCRA does not require a consumer reporting agency to add new items of information to its file. A consumer reporting agency is not required to create new files on consumers for whom it has no file, nor is it required to add new lines of information about new accounts not reflected in an existing file, because the [FCRA] section permits the consumer to dispute only the completeness or accuracy of particular items of information in the file. If a consumer reporting agency chooses to add lines of information at the consumer's request, it may charge a fee for doing so.

---

[10] Plaintiff argues that Equifax cites no case law or no statutory law in support of its argument that it has no affirmative duty to add credit data to a report. Plaintiff urges the court to "revert back to the plain language of the statute and Congressional intent, which both support the argument that in certain cases a credit reporting agency would be required to add information to a consumer credit report in order to comply with the dictates and intent of the Act." (Doc. # 31). The court finds the plain language of the statute to be entirely consistent with Equifax's actions. The statute clearly provides that Equifax can delete an item from the consumer's report if the item cannot be verified. The plain language of the statute, however, does not require that Equifax add credit data to a report even though, upon written verification from its furnisher (Plaintiff's mortgage company), it immediately did so.

[11] Defendant points out that Plaintiff's case must be distinguished from "technical accuracy" cases, in which credit reporting agencies have been held to have violated the FCRA because account descriptions, while technically accurate, were nevertheless incomplete or otherwise misleading. *See e.g., Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984); *McPhree v. Chilton Corp.*, 468 F.Supp. 494 (D. Conn. 1978). Each of those cases involved the actual reporting of account information – the dispute was whether the account description was accurate and complete. Here, there is no inaccurate, incomplete, or misleading account information, for no account information is being reported at all.

*FTC Official Staff Commentary,§ 611(3).* The court finds no FCRA violation in either the deletion of the mortgage account or any alleged delay in reinserting the account on Plaintiff's credit file.

Plaintiff also alleges that Defendant violated the FCRA because she never received notice from Equifax that the mortgage file had been deleted from her report. Plaintiff complains that she did not find out about the deletion of such account from her credit report until March 2001, when she informed the creditor and Equifax of her desire to have the mortgage account placed back on her report. (Davis Aff., ¶¶5-7). The evidence presented by Equifax indicates that such notice was, in fact, mailed postage prepaid to Plaintiff, (Fluellen ¶8), and Plaintiff has presented no evidence to the contrary other than her purported non-receipt of the notice. Section 1681i(a)(6) of the FCRA requires that notice be sent to the consumer by mail. The undisputed facts before the court are that Equifax complied with this requirement. Defendant argues, and the court agrees, that a consumer reporting agency cannot be held responsible if the consumer does not receive a postage prepaid correspondence which is properly addressed and posted.

### 2. Student Loans

On seven occasions from June to October 2001, Plaintiff disputed inaccurate information on her credit report regarding the status of her student loan account. (Davis Aff., ¶¶ 10, 11; Davis Depo. p. 26:9-14; Fluellen Aff.,¶ 11). Plaintiff claims that, despite having provided Equifax with additional information, including letters from the student loan creditor indicating that Plaintiff's account was reported in error, Equifax refused to delete the credit report or take into account the conflicting reports given by the creditor on this account. (Doc. # 31).

The undisputed evidence indicates that Equifax acted reasonably with respect to Plaintiff's disputes regarding her student loans. Each time that Plaintiff contacted Equifax, it conducted a

reinvestigation by contacting the furnishers of information, notifying them of the nature of the dispute, and asking them to investigate the information currently being reported. (Fluellen Aff., ¶ 11). On each occasion, the various student loan creditors *verified the accuracy of the reported information*. (Fluellen Aff., ¶ 11). On each occasion, Equifax notified Plaintiff explaining what items had been investigated and the results of each investigation. (Fluellen Aff. ¶ 11). Given the repeated verification of the information by the student loan companies, Equifax acted reasonably in leaving the account on Plaintiff's credit file. In fact, when the student loan companies failed to return Equifax's eighth inquiry in October 2001, Equifax promptly removed the accounts from the credit file in November 2001 and notified Plaintiff of the removal. (Fluellen Aff., ¶ 12). The court finds these actions reasonable and sufficient under the FCRA.

Further, this court is not persuaded by Plaintiff's reliance on the Sixth Circuit's decision in *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982). In *Bryant*, a jury found the Defendant credit reporting agency liable under § 1681e(b) for failure to follow reasonable procedures to assure maximum possible accuracy of the information. *Bryant*, 689 F.2d at 76-78. The Sixth Circuit noted that the evidence presented to the jury showed that "Defendant's effort to 'assure maximum possible accuracy of the information' in the mortgage report [was] comprised of two phone calls [to the creditors to reverify the information contained in the report]." *Bryant*, 689 F.2d at 79. The court noted that, "it would have taken little added effort to immediately advise the creditors of the Plaintiff's complaints and to request investigation and re-evaluation based upon the most recent data." *Bryant*, 689 F.2d at 78. Accordingly, the Sixth Circuit affirmed the jury verdict and found that Defendant did not automatically comply with § 1681e(b) by simply reporting correctly the information supplied to it by creditors. *Bryant*, 689 F.2d at 78.

12

First and foremost, this court is not bound by *Bryant*. Nonetheless, the court finds Equifax's actions in this case to be distinguishable from the agency sued in *Bryant*. In this case, Equifax *did advise* the creditors of Plaintiff's complaints on multiple occasions and *did request* reinvestigation by the creditors each time Plaintiff raised a dispute – actions which the *Bryant* court suggested would have been sufficient to satisfy § 1681e(b). *Bryant*, 689 F.2d at 78. Equifax also acted reasonably and judiciously when it deleted the mortgage account from Plaintiff's credit file after the mortgage company failed to respond to its inquiries. Rather than allow potentially incorrect information to remain on Plaintiff's credit report, Equifax acted out of an abundance of caution and removed the account until the information could be verified. The deletion was not "premature" as Plaintiff has suggested; it was precautionary and authorized by the FCRA. The court finds no violation of the FCRA under these undisputed facts and summary judgment is proper for this reason alone.

### B. In Any Event, Plaintiff Has Not Demonstrated That She Suffered Damages Caused by a Violation of § 1681e(b)

Additionally, the court finds that Plaintiff lacks "evidence tending to show that [she was] damaged as a result of an allegedly inaccurate credit report" under § 1681e(b). *Cahlin*, 936 F.2d at 1160. Although Plaintiff believes that she was denied credit from Alabama Power, Compass Bank, Gateway,[12] and Travelers Insurance based upon inaccurate information provided by Equifax, (Davis Depo. pp. 50:11-17, 56:17-18, 57:9-58:5, 60:10-12; Davis Aff., ¶¶ 12, 13, Ex. B), the undisputed evidence does not substantiate this claim.

---

[12] Although Plaintiff's complaint also claims that she was denied credit by Gateway (Doc. # 1), the undisputed evidence indicates that Plaintiff did, in fact, purchase a computer on credit from Gateway, albeit at a high interest rate. (Davis Depo. 95:6 – 95:12).

13

First, with respect to Compass Bank and Travelers Insurance, Plaintiff has presented no admissible evidence to support her claim that publication of credit information by Equifax led to their denials of credit to her.[13] Although Plaintiff has testified that she was denied credit at Compass Bank because her credit score was insufficient, Plaintiff has not presented any evidence to show that Compass Bank relied on a report *from Equifax*, as opposed to a report from another credit reporting agency. (Davis Depo., 50:11-17; 51:15-52:18; 56:17, 18, 58:19-59:14; 61:4-6). In fact, Equifax has presented undisputed evidence that it has no record of issuing a credit report to Compass Bank. (Fluellen ¶ 15). Similarly, Plaintiff claims that she was denied credit by Travelers Insurance and obtained credit from Gateway only with a high rate of interest. Equifax's records show no inquiries by (*i.e.*, no credit report issued to) those entities. (Fluellen ¶¶ 14, 16).

In fact, the only admissible evidence offered by Plaintiff to show that a creditor relied on an Equifax report in denying her credit is an October 2001 letter from Alabama Power. The letter indicates that Alabama Power obtained a credit report from Equifax, but it states only generally that "[a]fter carefully reviewing your application, we are sorry to advise you that we cannot extend credit to you at this time." (Doc. # 38, October 2001 Letter Attached to Affidavit of Doug Page). The letter advised Plaintiff to contact Alabama Power "[i]f you would like a statement of specific reasons why your application was denied." (*Id.*). Plaintiff has presented no evidence regarding the specific reasons for her credit denial at Alabama Power, other than her hearsay testimony that someone at

---

[13] Although Plaintiff claims that she is competent to testify about credit reports which Equifax issued to third parties, the court finds that she is not. Any such testimony would be unsupported hearsay, and Plaintiff has provided no other non-hearsay evidence from the third parties who allegedly received an Equifax credit report.

Alabama Power told Plaintiff that she was denied credit generally because her credit score was insufficient. (Davis Depo. 51:15-52:4).

Moreover, the undisputed evidence indicates that Plaintiff never reapplied for credit with any of the above-referenced companies after the student loan accounts were removed from her credit file and the mortgage account was reinserted. (Davis Depo., 55:21 – 56:2, 62:8 – 62:11). Accordingly, there is no evidence in the summary judgment record to indicate a correlation between those disputes and her credit denials. In fact, in 2003, even after Equifax did everything Plaintiff requested – *i.e.,* removed the student loan accounts and reinserted the mortgage account – Plaintiff was still denied credit with Sears and American Express and could not obtain an acceptable rate to refinance her home. (Davis Depo. 18:9 – 18:23, 93:12 – 94:23). Without "evidence tending to show that [she was] damaged as a result of an allegedly inaccurate credit report" issued by Equifax, Plaintiff's claims cannot withstand summary judgment. *Cahlin,* 936 F.2d at 1160.

### C.   In Accordance with § 1681i(a), Equifax Performed a Thorough Reinvestigation of Plaintiff's Disputed Items and Provided the Creditors with All Relevant Information Regarding the Disputes

Section 1681i(a) of the FCRA states the duty of a credit reporting agency for investigating a disputed account as follows:

> (1) If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file.
>
> (2)(A) . . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute. . . The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

15

15 U.S.C. §1681i(a)(2000). Section 1681s-2(b) of the FCRA recognizes that the creditor -- not the credit reporting agency -- is the party actually responsible for the reinvestigation. 15 U.S.C. §1681s-2(b) (2000).

Although Plaintiff contacted Equifax on a number of occasions to dispute various parts of her credit file, the undisputed evidence indicates that in each instance, Equifax contacted the original furnisher of information and forwarded the disputed information to the creditor as required by § 1681i. (Fluellen ¶¶ 8, 11, 12). With respect to Plaintiff's student loans, Equifax contacted the creditor all eight times that Plaintiff disputed the information, relaying Plaintiff's dispute with respect to the status of the account. (Fluellen ¶ 11). The creditor, the party actually responsible for the reinvestigation, verified the information seven times. (Fluellen ¶ 11). When the creditor failed to timely respond to Equifax's eighth request for investigation, Equifax immediately deleted the disputed items in November 2001 and notified Plaintiff of the deletion. (Fluellen ¶ 12). With respect to Plaintiff's mortgage, after Plaintiff complained about the late-status of her account in September 2000, Equifax promptly began a reinvestigation of the disputed item, contacting the direct source of the information and relaying the nature of the dispute. (Fluellen ¶8). Despite attempts to contact the mortgage company, Equifax did not receive a response, could not verify the information as reported, deleted the item from Plaintiff's credit file, and informed Plaintiff of the deletion.

(Fluellen ¶8).[14] The undisputed evidence indicates that Equifax acted pursuant to § 1681i in conducting its reinvestigation of Plaintiff's disputes.

Plaintiff also alleges that Equifax failed to review and consider all relevant information submitted by her with respect to the disputed information on her credit report. The only "evidence" Plaintiff offers for this assertion is the fact that Equifax communicated with the creditors electronically. (Fluellen Depo., 33:24-34:12). Plaintiff's argument assumes that electronic communication leaves out "all the relevant information regarding a dispute provided by the consumer," and violates § 1681i. (Doc. # 31). This argument is meritless. First, there is no evidence in the record to suggest that Equifax failed to communicate to the creditors all relevant information submitted by Plaintiff.[15] Indeed, the evidence is to the contrary. (Fluellen Aff., ¶ 11). Second, Plaintiff has not cited any case law to suggest that mere electronic communication is insufficient to comply with § 1681i(a)(2)(A) as a matter of law. Plaintiff has not shown that Equifax violated § 1681i by failing to review, consider, and pass along all information presented by her, and summary judgment is appropriate on this claim as well.

---

[14] To the extent that Plaintiff claims under §1681i that Equifax should have reinvestigated and reinserted her mortgage account after it was removed in 2000, this claim fails as a matter of law. The investigation-triggering language of §1681i reads: "If the completeness or accuracy *of any item of information contained in a consumer's file* at a consumer reporting agency is disputed by the consumer. . . ." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). When Plaintiff contacted Equifax in 2001 to request reinsertion of her mortgage account, the disputed account was not part of Plaintiff's current credit report. Accordingly, under the plain language of the FCRA, Equifax had no duty to investigate an account that it was not reporting at the time, and Plaintiff's claim cannot withstand summary judgment.

[15] Further, Plaintiff has admitted that she does not know who Equifax contacted during their investigation of her student loan disputes, does not know what information Equifax asked the creditors to reinvestigate, and does not know what the creditors told Equifax following the requests to investigate. (Davis Depo., 31:5-31:12, 35:20-36:12, 42:19– 42:2).

17

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial and that Defendant is entitled to judgment as a matter of law. Defendant's motion to strike is due to be denied. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ___15th___ day of September, 2004.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE